## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PRAIRIE BAND POTAWATOMI NATION**, a federally recognized Indian Tribe | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **CASE NO. 24-CV-____** |
| **XAVIER BECERRA**, in his official capacity as Secretary, U.S. Department of Health and Human Services; **DEB HAALAND**, in her official capacity as Secretary, U.S. Department of the Interior; **ROSELYN TSO**, in her official capacity as Director, Indian Health Service; and the **UNITED STATES OF AMERICA**, | ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

Plaintiff Prairie Band Potawatomi Nation, for its cause of action against the Defendants named above, alleges as follows:

### INTRODUCTION AND SUMMARY

1.     This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services. Plaintiff, the Prairie Band Potawatomi Nation (the "Nation"), seeks money damages under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201, and 25 U.S.C. § 5331(a), based on the Secretary's violation of the Nation's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for a Contract and Funding Agreement entered into under the ISDEAA, Pub. L. No. 93-638, as amended, 25 U.S.C. §§ 5301-5399.

1

2.      This action follows several United States Supreme Court decisions finding the federal government's failure to pay contractors, such as the Nation, full CSC to be a breach of contract and violation of the law. *See Salazar v. Ramah Navajo Chapter*, 567 U.S. 182 (2012); *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005) (consolidated cases).

3.      The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of law and breach of contract. *Becerra v. San Carlos Apache Tribe*, 602 U.S. ----, 144 S.Ct. 1428, 1439-45 (2024).

4.      Defendants breached the Nation's agreements and violated the ISDEAA by failing to pay the full CSC owed to the Nation under the statute and the Nation's Contract and Funding Agreement for calendar year ("CY") 2016.

5.      Defendants paid only a portion of the CSC owed under the Nation's contracts, due to their misinterpretation of the ISDEAA. Specifically, IHS failed to pay the total CSC award amount for CY 2016, and the CSC associated with the portion of the Nation's health care program funded in part with third-party revenues-payments from Medicare, Medicaid, private insurers, and others. In doing so, IHS breached its contractual agreements with the Nation and resulted in additional expectancy damages.

6.      This action challenges IHS's denial of the Nation's Contract Disputes Act claims for CY 2016 and seeks damages and other relief.

## JURISDICTION AND VENUE

7.      This controversy arises under agreements between the United States and the Nation for the operation of federal health programs for Indians carried out pursuant to ISDEAA. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1362; the Contract Disputes Act, 41 U.S.C. § 7104; and Section 110 of the ISDEAA. *See* 25 U.S.C. § 5331(a) and (d) (providing

original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

8.      In two letters dated December 29, 2022 and March 31, 2023, the Nation requested IHS contracting officer's decisions on claims for underpaid CSC in CY 2016. According to IHS, the agency received this request on August 24, 2023 ("Decision Letter"). In the Decision Letter, IHS denied the Nation's claim. This Nation has filed this action within 12 months of receipt of the IHS decisions, as required by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because all defendants are subject to this Court's exercise of personal jurisdiction; and pursuant to 28 U.S.C. § 1391(e)(1) in that this is a civil action in which each of the defendants is an officer or employee of the United States or an agency thereof acting in his or her official capacity, or an agency of the United States, no real property is involved in the action, and the plaintiff resides in this judicial district.

**PARTIES**

10.      Plaintiff Prairie Band Potawatomi Nation is a federally recognized Indian tribe occupying the Prairie Band Potawatomi Nation Reservation in Kansas, with governmental offices at 16281 Q Rd. Mayetta, Kansas 66509. *See* 89 Fed. Reg. 944, 946 (Jan. 8, 2024). The Nation is an "Indian tribe" eligible to contract and compact with IHS to carry out a range of health care programs, functions, services, and activities ("PFSAs") through the Prairie Band Potawatomi Health Center.

11.      Defendant Xavier Becerra, the Secretary of the United States Department of Health and Human Services ("Secretary"), has overall responsibility for carrying out all the functions,

responsibilities, authorities, and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

12.     Defendant Deb Haaland is the Secretary of the Department of the Interior, who has the federal responsibility to administer and oversee the Interior Business Center (the cognizant agency with which the Nation negotiates the indirect cost rate), which rate is incorporated into the Nation's contracts for the calendar year. She is sued in her official capacity.

13.     Defendant Roselyn Tso is the Director of IHS, the agency charged by law with the responsibility for implementing, on behalf of the United States, the ISDEAA and other health laws benefitting American Indians and Alaska Natives. 25 U.S.C. § 1661(c)(3). She is sued in her official capacity.

14.     The United States is a party to the Nation's ISDEAA agreements. *See*, e.g. CY 2016 Funding Agreement 60G040083, as modified ("Funding Agreement"). Throughout this Complaint (unless the context commands otherwise), the terms "government," "Secretary," "HHS," "Director," and "IHS" are used interchangeably.

## STATUTORY BACKGROUND AND GENERAL ALLEGATIONS

15.     During CY 2016, the Nation provided health care services to eligible American Indians and other eligible beneficiaries pursuant to CY 2016 Funding Agreement 60G040083, as modified; authorized by Title I of the ISDEAA, 25 U.S.C. §§ 5301-5332.

16.     The ISDEAA authorizes the Nation, other tribes, and tribal organizations to assume responsibility to provide PFSAs that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide the Nation two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had

the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. §§ 5325(a)(2) & (3); 25 U.S.C. § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

17.     The terms of the contracts are required by ISDEAA. All Title I contracts state that the contracts "shall be liberally construed for the benefit of the Contractor . . . ." 25 U.S.C. § 5329(c)(model agreement § 1(a)(2)).

18.     There are three types of CSC: (1) pre-award and start-up costs, which are one-time costs to plan, prepare for, and assume operation of new or expanded PFSAs, *see* 25 U.S.C. § 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A). This action involves indirect and direct CSC.

19.     The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC. 25 U.S.C. § 5325(g) (emphasis added); *see also Cherokee Nation*, at 634. ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.")

20.     The statute defines contract support costs as follows:

The contract support costs that are eligible costs for the purposes of receiving funding under this Act shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of –

    (i)     direct program expenses for the operation of the Federal program that is the subject of the contract; and

    (ii)    any additional administrative or other expense incurred by the governing body of the Indian Tribe or Tribal organization and any overhead expense incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract,

except that such funding shall not duplicate any funding provided under section 106(a)(1).

25 U.S.C. § 5325(a)(3)(A). Thus the entire "Federal program" that is the subject of the contract – including program income from that Federal program – generates CSC requirements.

21.     ISDEAA obligates IHS to pay "reasonable and allowable costs" of "direct program expenses" plus "any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of the Federal [PFSA]." *Id*. The only limit on this payment obligation is that a CSC payment shall not duplicate an amount paid in the Secretarial amount (that is, the amount "provided under subsection (a)(1) of this section.") *Id*.

22.     The Nation's contracts were authorized by Title I of the ISDEAA, 25 U.S.C. §§ 5301-5332. At all relevant times, 25 U.S.C. § 5325 and related funding provisions of Title I of the ISDEAA controlled the Secretary's funding obligations under the contracts. These are the same provisions that the Supreme Court analyzed in *Cherokee Nation, Ramah*, and *Becerra*.

23.     25 U.S.C. § 5325(a)(1) provides for direct program funding, sometimes referred to as the "Secretarial amount," representing the amount the Secretary "would have otherwise provided for the operation of the programs." *Id*. The Secretarial amount was subject to being changed to the extent appropriations supporting the contracted program increased or decreased.

Such changes generally occurred midyear. The Nation's contract was subject to such modifications.

24.    When IHS provides direct services to eligible beneficiaries, the PFSAs are funded not only by funds appropriated by Congress, but also by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others. *See generally* 42 U.S.C. §§ 1395 *et seq., 1396 et seq., 1397aa et seq.* Each year in its budget request to Congress, IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections. *See, e.g.,* Dep't of Health & Human Servs., *Indian Health Service FY 2017 Justification of Estimates for Appropriations Committees,* at CJ-156 (reporting that in FY 2015, IHS collected $1.151 billion from third-party insurers … "The FY 2017 estimates above are based on the FY 2015"); *Indian Health Service FY 2021 Justification of Estimates for Appropriations Committees,* at CJ-188 (reporting that in FY 2020, IHS collected an estimated $1.194 billion from third-party insurers). "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets" – often 60% or more. *Id.*

25.    By the same token, the Nation, when carrying out PFSAs under its Contract and Funding Agreement, it is required by law and contract to collect third-party revenues. Like IHS, the Nation is required to bill responsible third parties because IHS and tribal programs are both "payer[s] of last resort." 25 U.S.C. § 1623(b).

26.    ISDEAA authorizes the Nation to assume responsibility to provide to its Tribal Members and other eligible patients served by those programs. These services were previously provided by IHS. IHS's contractual obligation to the Nation was to make certain payments for the Nation's operation of the services, including payments required by the Nation for its administrative functions and other costs of carrying out the contracts.

27.     All third-party revenue or "program income" must be, and is, expended on PFSAs included in the Nation's Funding Agreement with IHS. Title I of the ISDEAA mandates as follows:

> The program income earned by a tribal organization in the course of carrying out a self-determination contract –
>
> (1) shall be used by the tribal organization to further the general purposes of the contract; and
> (2) shall not be a basis for reducing the amount of funds otherwise obligated to the contract.

25 U.S.C. § 5325(m). *See also* 25 U.S.C. §§ 1621f(a)(1), 1641(c)(1)(B), and 1641(d)(2)(A) (requiring tribes to spend third-party revenues on health care programs).

28.     Thus, by law, these third-party revenue funds are part of the Federal program carried out by the Nation under its ISDEAA agreements. *See Becerra*, at 1440; *Navajo Health Foundation-Sage Memorial Hospital, Inc. v. Burwell,* 263 F. Supp. 3d 1083, 1166-67 (D.N.M. 2016).

29.     The IHS's Indian Health Manual ("IHM") acknowledges that a tribe's "Total Health Care Program" includes the portion funded by "collections from Medicare, Medicaid, and private insurance," not just IHS appropriations. IHM § 6-3.1(G)(34). Therefore, that portion must be included when calculating the amount of CSC owed to the Nation.  *Id*. §§ 6-3.2(E)(1)(a)(i), (E)(1)(b), *available at* https://www.ihs.gov/ihm/pc/part-6/p6c3/.

30.     The agency derives this rule from the statute itself: the entire "Federal program" – including program income – carried out by the Nation under the ISDEAA generates CSC requirements. *See* 25 U.S.C. § 5325(a)(3)(A).

**A.  Calculation of Contract Support Costs Owed to the Nation**

31.     As noted above, the ISDEAA requires IHS to pay full CSC. *Becerra*, 144 S.Ct. at 1439-45; *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, at 185 (2012); *Cherokee Nation*, 543 U.S. at 634. For the Nation, as for most tribes, the full amount of CSC is determined by multiplying

a negotiated cost rate by the amount of the direct cost base. *See* 25 U.S.C. § 5325(c)(3), (4) & (5) (requiring Secretary to report annually on tribes' indirect cost rates and direct cost bases); *Cherokee Nation,* 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to the Tribe.'").

32.     The Nation's CY 2016 indirect cost rate agreement as determined by the Department of the Interior's Interior Business Center, which applies government-wide, calls for an indirect cost rate of 29.47% on a direct cost base comprised of "[t]otal direct costs, less capital expenditures and passthrough funds." *Indirect Cost Negotiation Agreement with U.S. Department of the Interior*, Interior Business Center. October 4, 2016.

33.     IHS accepts the Nation's rates, as it must. The controversy is over the amount of the direct cost base and the indirect cost shortfalls that were not properly awarded. Specifically, the issue is whether third-party revenues expended to provide services within the scope of the Nation's ISDEAA agreements are part of the direct cost base and therefore generate CSC requirements. IHS argues, in its decision denying the Nation's claims, that only federal program funds "transferred" by IHS to the Nation are eligible for contract support. *See* Decision Letter, at 5-7.

34.     Similarly, IHS argued that only the Secretarial amount generates CSC, and the Secretarial amount is limited to funding for PFSAs transferred under the ISDEAA agreement. Decision Letter, at 5 and 7. However, the ISDEAA says that the Secretarial amount includes all resources the Secretary "would have otherwise provided" to carry out the PFSAs himself. 25 U.S.C. § 5325(a)(1). As noted above, the Secretary uses third-party revenues to carry out PFSAs

when he directly provides services to beneficiaries, so these resources are part of the Secretarial amount.

35.     Yet in CY 2016, IHS paid less than the total award owed in CSC in support of health care services, including those funded by the award and third-party revenues, giving rise to the damages described herein.

36.     As documented in the Nation's financial records in CY 2016, as audited, the Nation received an IHS Contract Award (Direct Base Only) for $2,672,334. Taking the Direct Base and multiplying it by the Indirect Cost rate of 29.47% yields the Indirect Costs due to the Nation at $787,537. The nation only received $497,046, resulting in a shortfall of $290,491.

37.      The Nation in CY 2016 expended $2,766,649 in third party revenues associated with IHS programs third party expenditures. IHS paid no CSC in support of those funds, giving rise to the following damages. Taking the third party expenditure amount and multiplying the Nation's negotiated indirect cost rate of 29.47% yields the amount due for third-party program dollars, which is $815,331.

38.     The Nation therefore had an expectation to be paid by IHS in support of the Indirect Costs and third party program dollars in the combined amount of $1,105,822. Taking the amount of third party revenue expenditures and dividing it against the direct award amount (third party program expenditures $2,766,649 divided by Direct Base $2,672,334) equals 103.53% which is the rate of the lost third party insurance dollars that the Nation incurred, and multiplying that against the combined amount of $1,105,822, yields the Nation's expectancy damages of $1,144,858.

39.     Expectancy damages for breach of the Secretary's contracts with the Nation are measured by the amounts required to place the Nation in the position it would have been in had

there not been a breach. Thus, "an award of damages will often include an amount representing the profits that were lost as a result of the defendant's breach of contract, *because only by awarding lost profits will the plaintiff be made fully whole*." 24 WILLISTON ON CONTRACTS § 64:2 (4th ed.) (emphasis added). *See also* Restatement (Second) of Contracts § 347(b) (1981) (recoverable damages may include "incidental or consequential loss, caused by the breach.").

40.     As noted, the Nation generated third-party revenue and then used that revenue to provide services under its contracts, as required by law. IHS's failure to fully fund the Nation's indirect CSC for CY 2016 at the same level that the Secretary would have expended caused the Nation to divert program dollars to cover fixed administrative and overhead costs. These program dollars would, in turn, have been available for additional program services. This caused the Nation direct harm from the loss of third-party revenue and the loss of services. The Nation would have generated additional third party revenue had it not had to divert program dollars resulting further direct harm.

41. The total of these three claims owed to the Nation is $2,250,680.

### B. Procedural History of the Claims

42.     By letter dated December 30, 2022, the Nation made its claim upon the contracting officer(s) for unpaid CSC on third party revenues as described above. Specifically, the Nation asserted that "Indian Health Services' failure to pay Claimant's full contract support costs ("CSC") as required by the Indian Self Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5301 et seq., and the provisions of the compacts, as amended, in effect between the parties for CY 2016." CY 2016 Claim Letter at 1.

43.     IHS denied the Nation's claims in a letter dated August 24, 2023. In the denial letter, IHS argues that the program amount generating CSC needs is limited to appropriate funds transferred in the Funding Agreement and may not include third-party collections.

44.     The Nation filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

### C. Rule of Construction

45.     The Contract provides as follows: "Each provision of the Indian Self-Determination and Education Assistance Act (25 U.S.C. § 5301 *et seq*.) and each provision of this Contract shall be liberally construed for the benefit of the Contractor. . . ." *Salazar v. Ramah Navajo* at 194. (Applying this interpretive rule, which is part of the statutory Model Agreement from Title I, 25 U.S.C. § 5329(c), § 1(a)(2)). The Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *See also* 25 C.F.R. § 900.3(b)(11) (liberal construction rule applies to interpretation of ISDEAA regulations as well).

### COUNT I – BREACH OF CONTRACT (UNDERPAYMENT OF DIRECT AND INDIRECT CONTRACT SUPPORT COSTS)

46.     All prior allegations are adopted by reference as if fully set forth here.

47.     The ISDEAA requires IHS to pay the Nation's contract support costs in full. 25 U.S.C. § 5325(a) & (g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185; *Becerra*, 144 S.Ct. at 1439-45.

48.     General contract principles control the calculation of damages in government contract litigation. This is because when "the United Sates enters into contract relations, its rights and duties therein are governed generally by the law applicable to contract between private individuals." *United States v. Winstar Corp*., 518 U.S. 839, 895 (1996) (quoting *Lynch v. U.S.*, 292 U.S. 571, 579 (1934)).

49.     General contract law on the issue of damages is clear that the Nation is entitled to damages which protect its expectation interest, in both the bargain and by being put in as good a position as [the Nation] would have been in *had the contract been performed* . . . ." Restatement (Second) of Contracts § 344(a) (1981) (emphasis added).

50.     To fulfill the Nation's "expectation interest" arising from the Secretary's breach of contract for failing to pay the contract amount owed, the Nation is entitled to damages for the underpayment of its CSC, together with accrued interest and attorney's fees and costs, as specifically prayed below.

51.     IHS failed to pay the full amount due even under its own calculations. IHS failed to reimburse the Nation for its full administrative and overhead costs in CY 2016 associated with administration of health care programs carried out under the Nation's contracts and funded solely with IHS-appropriated dollars.

52.     In doing so, IHS violated the ISDEAA.

53.     As a result of IHS's violation of the ISDEAA, the Nation sustained damages totaling $290,491 in CY 2016.

54.     Defendants are liable to the Nation, under 25 U.S.C. § 5331(a), for its CY 2016 damages.

## COUNT II – BREACH OF CONTRACT (THIRD PARTY REVENUES)

55.     All prior allegations are adopted by reference as if fully set forth here.

56.     The Nation's Funding Agreement incorporates the statutory duty to fully fund CSC. The ISDEAA, in turn, requires fully funding CSC, a duty affirmed by the Supreme Court in *Ramah*, *Cherokee*, and *Becerra*, *supra*.

57.     The Nation was entitled to have CSC added to support the entirety of the IHS health programs it operated, regardless of the extent to which those programs were funded by appropriated dollars or third-party revenue dollars.

58.     By failing to pay indirect CSC on the third-party-revenue-funded portion of the Federal program, the IHS breached its contractual agreements with the Nation.

59.     As a result of IHS's breaches of contract, the Nation sustained damages totaling $815,331 in CY 2016.

### COUNT III --BREACH OF CONTRACT (EXPECTANCY DAMAGES)

60.     All prior allegations are adopted by reference as if fully set forth here.

61.     IHS failed to calculate and pay the administrative costs of operating the third-party revenue-funded portion of the IHS contracts, even though generating those revenues and spending them on health care was expressly contemplated by the contracts and was an integral and essential part of the Funding Agreement.

62.     IHS's failure to pay the Nation indirect CSC associated with the Nation's third-party revenue supported health care operations—that is, the failure to include these third-party revenues in the IHS direct program base against which the Nation's indirect cost rate was applied—resulted in significant underpayment to the Nation of indirect CSC. It was also contrary to law.

63.     As a result of IHS's breach of contract, the Nation incurred no less than $1,144,858 in damages from the unpaid CSC resulting from the amount of third party revenues that would have been generated from the unpaid indirect costs paid from third party program dollars and direct cost funding.

64.     Defendants are liable to the Nation, under 25 U.S.C. § 5331(a) and the Contract Disputes Act for its CY 2016 total damages of $2,250,680.00.

### COUNT III --DECLARATORY RELIEF

65.     All prior allegations are adopted by reference as if fully set forth here.

66.     The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief. *See also* 25 U.S.C. § 5331(a).

67.     IHS refuses to pay CSC in support of health care services within the scope of the ISDEAA funding agreement but funded by program income, in violation of the ISDEAA mandates the CSC supports the entire Federal program.

68.     In the Denial Letter IHS limits the "Secretarial amount" to which CSC "shall be added," *see* 25 U.S.C. § 5325(a)(2). When providing health care services directly to Indians and other beneficiaries, the Secretary uses not only funds appropriated by Congress, but also third-party revenues. In carrying out its Funding Agreement, the Nation is required by law and contract to do the same.

69.     Therefore, the Nation is entitled to an Order declaring that program income expended within the scope of the ISDEAA agreement is part of the Federal program entitled to contract support and part of the Secretarial amount to which CSC "shall be added." 25 U.S.C. § 5325(a)(2), (3).

### PRAYER FOR RELIEF

70. The Nation respectfully requests the Court grant relief as follows:

A.  Award the Nation $2,250,680 in damages, as summarized in the following table:

| Count | Description of the Claim | Amount |
|-------|------------------------|--------|
| Count 1: | Underpayment of IBC Awarded Rate (Shortfall Claim) | $290,491 |
| Count 2: | Failure to pay IBC Awarded Rate on Third Party Program Dollars | $815,331 |
| Count 3: | Expectancy Damages | $1,144,858 |
| | **Total:** | **$2,250,680** |

B.  Award such other damages as may be proven in this action;

C.  Declare that IHS must pay CSC on the entire Federal program and Secretarial amount, including third-party revenues expended on health care services within the scope of the Nation's Funding Agreement;

D.  Order the payment of interest on these claims pursuant to the Contract Disputes Act, 41 U.S.C. § 7109; and the Prompt Payment Act, 31 U.S.C. §§ 3901-3907;

E.  Award the Nation its attorney fees and expenses pursuant to the Equal Access to Justice act, 28 U.S.C. § 2412, 25 U.S.C. § 5331(c), 28 U.S.C. § 2412 and other applicable law; and

F.  Grant the Nation such other and further relief as the Court deems appropriate.


DATED this 21st day of August, 2024.

Respectfully Submitted,

PEEBLES BERGIN SCHULTE & ROBINSON LLP

By: _____

WM. BLAKE FOLLIS
KS Bar #26011
D. Kan. #78688
825 S Kansas Ave., Ste. 515                              .
Topeka, KS 66612
P: (918) 724-2335
F: (916) 441-2067
bfollis@ndnlaw.com

CONLY J. SCHULTE
NE Bar #20158, *PHV Pending*
945 Front St.
Louisville, CO 80027
P: (303) 284-8228
F: (916) 441-2067
cschulte@ndnlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of August 2024, they served a true and correct copy of the foregoing Complaint upon the parties below, by delivering the same via U.S. Mail First Class to:

Secretary Xavier Becerra
U.S. Department of Health and Human Services
200 Independence Avenue, SW
Washington, DC 20201

Secretary Deb Haaland
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

Director Roselyn Tso
Indian Health Service
5600 Fishers Lane
Rockville, MD 20857

*DEFENDANTS*

U.S. Attorney General Merrick Garland
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

PEEBLES BERGIN SCHULTE & ROBINSON LLP

By: _____

    WM. BLAKE FOLLIS
    KS Bar #26011
    D. Kan. #78688
    825 S Kansas Ave., Ste. 515    .
    Topeka, KS 66612
    P: (918) 724-2335
    F: (916) 441-2067
    bfollis@ndnlaw.com

    ATTORNEY FOR PLAINTIFF